UTICA,
Aug. 1824.

Jackson
v.
Harris.

JACKSON, *ex. dem.* WORDEN, *against* HARRIS.

EJECTMENT, for part of lot No. 4, in the old township of *Brutus*, in *Cayuga* county ; tried at the *Cayaga* Circuit, before (the late) Mr. Justice PLATT, *May 27th,* 1822.

After the defendant had confessed lease, entry and ouster, at the trial, the plaintiff produced a deed from *Daniel Avery* and *William Satterlee,* commissioners for loaning money of the county of *Cayuga,* to *Allen Worden,* the lessor of the plaintiff, dated *September 15th,* 1820, expressed to be for the consideration of $115, to them in hand paid, by *Worden ;* and declaring that, pursuant to " an act authorizing the loan of monies to citizens of this state,"(a) they granted, bargained, &c. to *Worden,* in fee, " all that certain tract of land, situate in the town of *Cato,* formerly *Brutus,* county of *Cayuga,* and state of *New York,* being a part of lot number 4, in the original township of *Brutus,* beginning, &c." (by metes and bounds) " containing 100 acres of land, being the same land mortgaged to the commissioners for loaning money aforesaid, by *Peter Wolverton,* on the *15th* day of *July,* 1808." The deed was executed by *Daniel Avery* and *William Satterlee,* and witnessed by *Glen Cuyler* and *Jedediah Morgan.*

An advertisement of mortgaged premises for sale, under the " act authorizing a loan of monies to the citizens of this state," passed *April* 11, 1808, (*sess.* 31, *ch.* 216, 5 *W.* & *S.* 392,) is sufficiently particular in its description of the premises, if it contain the name of the mortgagor, the date and number of the mortgage, the number of the lot in which the premises lie, the town in which it was situate when the mortgage was given, and the quantity of acres mortgaged, without describing the premises by metes and bounds.

(a) This is entitled " an act authorizing a loan of monies to the citizens of this state, and was passed *April* 11, 1808." It will be found at large in the acts (*sess.* 31, *ch* 216,) printed by *W.* &. *S. vol.* 5, *p.* 392, *amended sess.* 32, *ch.* 152, *id. p.* 510, *sess.* 38, *ch.* 56, *sess.* 41, *ch.* 38, *sess.* 42, *ch.* 36, *sess.* 44, *ch.* 189, *sess.* 45, *ch.* 249.

A proper form of an advertisement for sale of several lots by commissioners, under the 17th section of that act.

The 17th section, directing the commissioners to put up advertisements of sale at three of the most publick places in the county, is sufficiently complied with, by fixing them in three of the most publick places, though they are all remote from the premises in question.

Whether the commissioners have a right to sell on credit ? Quere.

But the objection that the commissioners gave a credit for the surplus money, beyond he principal and interest due, can only be made by the mortgagor.

It *seems,* that it is no objection to the validity of the sale, that the commissioners do not proceed and sell on the first default ; but wait till several years interest accumulates.

The plaintiff then read in evidence, a mortgage, for the consideration of $76, executed by *Wolverton*, to the commissioners, dated the 15*th July*, 1808, for the premises in question, being the same described in the deed, *habendum,* &c. ; " unto the said commisioners, and their successors and assigns forever, and for the uses and purposes mentioned in an act, &c. entitled " an act, appointing a loan of monies to the citizens of this state ;" providing that if *Wolverton*, &c. should pay, or cause to be paid to the commissioners, the interest of $76, at 7 *per cent. per annum*, on the first. *Tuesday* of *May*, yearly and every year, and should also pay them the principal sum, &c. when the same should by them be demanded, at any time after the 1*st Tuesday* of *May*, 1815, then the mortgage to be void, &c.

It was admitted, on the part of the defendant, that he derived title from *Wolverton*, the mortgagor, subsequent to the time when the mortgage was executed.

The plaintiff's counsel then called *William Satterlee*, one of the commissioners, who testified that the interest due on the mortgage remaining unpaid for three years, the commissioners, on the 26*th* of *May*, 1820, advertised the mortgaged premises for sale, in pursuance of the statute on that subject, to be sold at the court house, in the county of *Cayuga*, on the 3*d Tuesday* of *September*, at 10 o'clock in the forenoon of that day ; and that the same were exposed to sale in conformity with the advertisement, and struck off to the lessor of the plaintiff, who was the highest bidder therefor ; that he immediately paid what was due on the mortgage to the witness ; that some time in *October* next succeeding the sale, the witness executed a deed to the lessor of the plaintiff, and sent it by one of the witnesses to the deed, to *Daniel Avery*, the other commissioner, for his signature. The plaintiff's counsel then called *Daniel Avery*, the other commissioner, who testified that he received the deed from *Glen Cuyler*, one of the witnesses to it, and executed and returned it to the lessor of the plaintiff by *Cuyler*'s hands. He further testified, that no person had caused his name to be entered on the books of the commis-

sioners, as assignee of the mortgagor. The counsel for the plaintiff here rested the cause.

The counsel for the defendant then produced a printed copy of the advertisement of the commissioners of loans, referred to by *William Satterlee*, which was admitted by the plaintiff's counsel, to be a correct copy of the original, and was in the words and figures following, to wit : " Default having been made in the payment of the interest due upon monies secured to be paid to the commissioners for loaning monies for the county of *Cayuga*, on the following pieces or parcels of lands, described in the following list or schedule ; and for a more particular description thereof, reference to their several mortgages and minutes will appear :

| Names of Mortgagors. | No. of Mortgage. | Date of Mortgage. | Lying in what town at the date of the mortgage. | On what lot. | No. of acres. | Townships. |
|---|---|---|---|---|---|---|
| *Henry Burgess*, | 9 | 1sth *July*, 1808, | *Sempronius.* | *No* 47 | 87 | |
| *Thomas Lacy*, | 51 | 14th *July*, 1808, | *Dryden*, | 5º | 150 | |
| *James Savage*, | 57 | 15th *July*, 1808, | *Lock*, | 29 | 100 | |
| *Peter Wolverton*, | 87 | 15th *July*, 1808, | *Cato*, | 4 | 100 | *Brutus.* |
| *Nehemiah Webb*, | 230 | 1st *May*, 1815, | *Scipio*, | 94 | 25 | |
| *W  C.  Wilson*, | 243 | 1st *May*, 1815, | *Brutus*, | 29 | 50 | *Aurelius.* |

Now, therefore, in pursuance of the act, entitled " an act, authorizing a loan of monies to the citizens of this state," and its subsequent amendments ; notice is hereby given, that on the 3d *Tuesday* in *September* next, the said several mortgaged premises will be sold, at ten o'clock in the forenoon of said day, at the court house, in said county, at publick vendue, to the highest bidder. Dated at *Auburn*, this twenty-sixth day of *May*, 1820.

> *Daniel Avery*, } Commis-
> *Wm. Satterlee*, } sioners."

The defendant's counsel then called *William Satterlee*, one of the commissioners. who testified, that he put an advertisement on the court-house door, at *Auburn*, in *Cayuga* county ; one at *Strong's* tavern, in *Owasco*, 8 miles south-

UTICA,
Aug. 1824.

Jackson
v.
Harris.

east of *Auburn* ; one at *Keeler's* tavern, in *Sempronius*, 16 miles south-east of the court-house ; and sent one to *Aurora*, which is 16 miles south-west of the court-house ; and that the premises in question lie 15 miles north of the court house ; that *James B. Clark* tendered him the amount of interest and principal, after the premises were sold to *Worden*, the lessor of the plaintiff, and after he had executed the deed to *Worden* ; that the offer of *Clark* was made sometime in the winter after the sale. The sum of about 15 dollars, being the surplus for which the land sold to *Worden*, over and above what was due on the mortgage, and which was due to *Wolverton*, remained sometime in the hands of *Worden*, after sale ; the commissioners of loans not wishing to receive it until it could be paid to *Wolverton*, who had removed from the state. The defendant's counsel then called *Daniel Avery*, the other commissioner of loans, who testified, that no particular arrangement was made with *Worden*, as to the overplus money going to *Wolverton*, and that there was no condition, that the deed was given to be held by the commissioners until the overplus was paid. He further testified, that he thought he saw the notice of sale posted up in a publick house in *Aurora*. The plaintiff, by consent, took a verdict, subject to the opinion of the Supreme Court on a case to be made.

*J. L. Richardson*, for the plaintiff, contended, that he derived a perfect title under the deed of the commissioners ; that they acted within their authority, and in conformity with the directions of the statute.

The objection will probably be made, that the description of the premises, in the advertisement of sale, was not so full as the act requires. The regularity of the proceedings depends upon the construction of the various sections in relation to this subject. The 11th section(a) fixes the time for paying the interest of the loan annually on the 1st *Tuesday* of *May*. By the 15th section, if not paid within 22 days after, the borrower is forever foreclosed ; and the commissioners are to advertise and sell as directed in the 17th section. The provisions of this section have been complied with, in terms, as to time. As to description, they are to

(a) *Sess.* 31, ch. 216, *s.* 11.

UTICA,
Aug. 1824.

Jackson
v.
Harris.

"cause advertisements to be fixed up at not less than three of the most publick places in the county where the premises are situate, describing the quantity and situation of the lands mentioned in the several mortgages foreclosed as aforesaid, and giving notice, &c." They are also to advertise in one of the publick papers of the county. In this case, advertisements were fixed up in 4 or 5 different places, beside being published in the newspaper.

The counsel here read the advertisement; and insisted that it was a substantial compliance with the act, in point of description. He said the act evidently contemplated a very brief notice ; for section 20, which determines the expense of proceeding, allows but $3 for all the services and expenses of sale.

The tender of the money by *Clark*, being after the sale, was too late ; besides, he established no right to make the tender. He assumed to be an assignee of the mortgagor, but, by the 20th section, the commissioners were not bound to recognize him in this character, unless he had been recorded as such in their books.

*D. Cady*, contra, submitted the following points or propositions, in writing :

I. The sale by the loan officers was void, and no title passed to the lessor of the plaintiff.

   1. Because the advertisement did not contain a sufficient description of the situation of the land.

   2. Because the advertisements were not put up and continued in the proper places.

   3. Because the sale was, in part, at least, upon credit, and the deed not executed in the presence of two witnesses.

   4. Because the sale was not on the day prescribed by law ; and

   5. Because the loan officers had no power, by law, to sell the premises.

II. There having been no regular sale of the premises, and the person under whom the defendant holds having

tendered to the loan officers the whole sum due upon the mortgage, he is entitled to retain the possession.

He added, that it is for the Court to say what degree of particularity in the description is required by the statute. There certainly may be a description which is insufficient; and we think the legislature intended it should be enough, at all events, to put the possessor of the land on his guard; as well as to enable those who attend the sale to find the land, acquaint themselves with its value, and be prepared to bid. "Lot No. 1, in *Brutus*," would enable any one to examine; but an advertisement by the commissioners, that they would sell "one of the lots in *Brutus*, would not enable a purchaser to bid understandingly, without examining every lot in the town. It is matter of publick law, that *Brutus* was divided into lots of 600 acres. Now, the commissioners say, that they will sell 100 acres of a certain lot. Who, from this, could say what part of the 600 acres were to be sold? It may be said, that the name of the mortgagor was mentioned, and that an examination of the commissioners' files would be a guide; but this is not enough. One cannot know through whose hands the land may have passed. Neither *name* nor *record* would, therefore, guide him; and he must examine 600 acres instead of one.

Again: the premises lie 14 or 15 miles north of the court house; yet all the advertisements are fixed up from 8 to 16 miles south of that place.

Fifteen dollars yet remain unpaid by the purchaser. The law is express that money must be paid, on a sale of this description. The commissioners have no power to sell on credit; and they must exact and receive the whole money. If they may give day for the 15 dollars, they may do the same with $15,000. The rule is, in its nature, inflexible; and cannot accommodate itself to the amount. There is no title in the purchaser, till the money is, in fact, paid to the utmost farthing.

It is conceded that the commissioners acted under a limited authority. Then, we say again, the sale was void, as not being made on the day required by the statute. Previous

to the day of sale, 3 years interest had been suffered to accumulate. By the 18th section, the commissioners are directed to sell on the third *Tuesday* of *September*, annually, all the lands mortgaged, in respect to which there shall have been a default in not paying the interest ; and by the 19th section, if no purchaser will bid to the principal and interest, they are to enter upon, and lease the lands for the benefit of the state. They are then to offer the land for sale, again, at the next *April* ; and if there is then no purchaser for an adequate sum. the state become seized of the lands, subject to a right of redemption in the mortgagor. Now it is fairly to be presumed. that all these steps were taken. It was the duty of the commissioners to set about them immediately on the mortgagor's default. Whether they did so or not, their powers of sale, in the ordinary way, ceased ; and a tender was made before they had regularly sold. The proceeding was void—it was as no sale—and the tender in season.

It is said, that on default of payment, the commissioners were, by the 15th section, seized of an absolute estate in the lands ; but though this be so, they held it for certain specified purposes. They cannot sit down and dispose of the land in any manner they choose. but must be guided by the statute. (*Denning* v. *Smith*, 3 *John. Ch. Rep.* 332.)

*Richardson*, in reply, cited *King* v. *Stow*, (6 *John. Ch. Rep.* 323) as in point, to shew that any irregularity in the proceedings of the commissioners in relation to fixing up advertisements, or making entries, &c. could not be objected against a *bona fide* purchaser at the sale. The description was sufficient——

[WOODWORTH, J. As far as I remember the practice under this act, the advertisements of sale have always been in the form which was used here.]

*Richardson*. And the practice is correct in principle. No one could be deceived who lived on *Wolverton's* land. This is a declaration to the possessor, and to purchasers, that *Wolverton's* land, to the extent of 100 acres, would be sold. Nor does it lie in the mouth of the defendant to say,

that because the commissioners have indulged him three years, they must, therefore, relinquish the whole amount. This was a matter which lay exclusively between them and the publick. The same answer applies to the objection, that the whole purchase money was not paid. The commissioners had a right to make the purchaser a depositary of the 15 dollars, or any larger amount, if they chose. They have done no more. The money remained with him, waiting a chance to be sent to the mortgagor.

Beside, though the commissioners gave credit for the whole, it is not for the defendant to object. They may assume the whole, and it will operate as a payment, although nothing be, in fact, paid.

*Curia*, per SUTHERLAND, J. The lessor of the plaintiff claims his title to the premises in question, by virtue of a deed from the commissioners for loaning money in the county of *Cayuga*, under the act " authorizing a loan of moneys to the citizens of this state," passed *April* 11th, 1808. (5 *vol. Laws*, by *W.* & *S.* 392.) The premises were mortgaged to the commissioners by one *Peter Wolverton*, on the 15th day of *July*, 1808 ; and default having been made by him in the payment of the interest, the commissioners, in pursuance of the directions of the act, sold them at publick auction, and the lessor of the plaintiff became the purchaser. The defendant derives title, also, from *Peter Wolverton*, by a conveyance subsequent to the mortgage ; and after the sale to the lessor of the plaintiff, he offered, by the hand of *Clark*, to redeem, by paying the amount due.

The only question in the case is, whether the sale by the commissioners was in conformity to the provisions of the act?

The principal objections are—

1. That the advertisements did not contain a sufficiently minute description of the situation of the land.

2. That they were not put up in the proper places.

3. That the purchase money was not all paid on the day of sale.

There is no pretence of fraud on the part of the commissioners. They are admitted to have acted in good

faith, and the lessor of the plaintiff is a *bona fide* purcha-
ser for a valuable consideration.

1. The 17th section of the act directs, "that the commis-
sioners shall cause advertisements to be fixed up at not less
than three of the most publick places of the county where
the premises are situate, describing the quantity and situa-
tion of the land, &c. and shall also cause such notice to be
given in, at least, one of the publick newspapers in the coun-
ty, if any such there be." The advertisement, in this case,
contained the name of the mortgagor—the date and number
of the mortgage—the number of the lot—the town in which
it was situated, when the mortgage was given—and the
quantity of acres mortgaged. It could not have been more
particular, without giving a description of the premises by
metes and bounds, as contained in the mortgage. The act
does not require such particularity. It contemplates only a
general description, sufficient to apprize the mortgagor that
his land is to be sold, and to enable any persons who may
wish to purchase, or who may be interested in the premises,
by subsequent liens, to locate and identify them.

In *Denning* v. *Smith*, (3 *John. Ch. Rep.* 332) one of the
advertisements neither contained the name of the mortgagor,
nor the number of one of the lots ; and these omissions were
held to be fatal. But the Chancellor seems to admit, that if
the name of the mortgagor, and the number of the lot, had
been inserted, the advertisement would have been good. He
says, the "omission of the mortgagor's name, and of the
number of the lot, in the advertisement in *Cattskill*, where
the agent of the owner resided, was a most unfortunate cir-
cumstance, &c. It was also an omission fatal, in any view,
to the legality of the notice." The other notices, the suffi-
ciency of which, in point of form, was not questioned, were
not as particular in their description as the advertisement in
this case. They described the premises as being in the town
of *Cairo*, and as being "lot No. 11, and part of lot No. 14,
near *Perce's* mill, containing 125 acres, mortgaged by *Hen-
ry Persen;*" without designating what part or portion of
the mortgaged premises was in each or either of the lots.
The first objection, therefore, is unfounded.

UTICA,
Aug. 1824.

Jackson
v.
Harris.

UTICA,
Aug. 1824.

Jackson
v.
Harris.

2. The second objection appears to be founded on the fact that the advertisements were put up in places remote from the mortgaged premises ; for there is nothing in the case to show that the places where they were put up, *were not three of the most publick places in the county.* This is all that the act requires. It is not necessary that one of the advertisements should be upon or near the premises ; and unless *one* of the three most publick places in the county was near the premises, an advertisement there would not be a compliance with the act. In *Denning* v. *Smith,* the omission to put up an advertisement in *Cairo,* which was in the neighbourhood of the premises, and was one of the most publick and central places in the county, was held by the Chancellor to be a circumstance which, in conjunction with other facts, tended to shew a fraudulent intent on the part of the commissioners. But, in this case, it does not appear that there was any publick place near the mortgaged premises.

In *King* v. *Stow,* (6 *John. Ch. Rep.* 323) all the advertisements were put up in the village of *Elizabethtown,* twenty miles distant from the mortgaged premises ; and although it appeared that a publick road passed through the premises, and that two publick ferries were maintained within two miles and a half of them, the notices were held to be good ; there being no evidence of a fraudulent intent, and *Elizabethtown* being, in fact, the most publick place in the county. The notices in this case were, therefore, regular.

3. The reason why the surplus, beyond the amount due to the state, was not immediately exacted from the purchaser, is stated by the commissioners to have been, because the mortgagor, to whom it was to be paid, had left the state, and the commissioners did not want the money until they could pay it over. They state expressly, in their testimony, that there was no agreement for a credit. The surplus was only $15, and there is nothing to show that it was not paid on demand. But this is an objection which, if it can be raised at all, can be urged only by the mortgagor.

. Judgment for the plaintiff.